<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SLT IMPORTS, INC., | No. 23cv18484 (EP) (JBC) |
| Plaintiff, | |
| v. | **OPINION** |
| SAR TRANSPORT SYSTEMS PVT LTD, *et al.*, | |
| Defendants. | |

**PADIN, District Judge.**

This is an admiralty action concerning a deal between Plaintiff SLT Imports, Inc. ("Plaintiff" or "SLT") and non-party Krishna Food Corp. ("Krishna"). The deal was that SLT would provide financing, through a bank facility, to Krishna so that Krishna can purchase food products from an Indian supplier to be shipped to Krishna in New Jersey (the "Cargo"). Defendant SAR Transport Systems Pvt Ltd. ("Defendant" or "SAR") was the shipping carrier for the Cargo. SLT alleges that SAR intentionally delivered the Cargo directly to Krishna without the required proof of payment by Krishna to SLT, in the form of endorsed bills of lading. Furthermore, SLT alleges that SAR knew at the time it issued the bills of lading that it would not comply with the requirement to deliver the Cargo to Krishna only upon such proof of payment. SLT alleges that these actions constitute fraud in the execution of a maritime contract (Count I) or, alternatively, breach of a maritime contract under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, *et seq.* ("COGSA") and general maritime law (Count II). D.E. 49 ("Second Amended Complaint" or "SAC").[1]

---

[1] SLT also names "DOES 1-10" as unidentified additional defendants but does not address their relationship to the named parties or the action.

SAR moves for judgment on the pleadings seeking dismissal of the Second Amended Complaint under Rule 12(c).  D.E. 81-1 ("Mot.").[2]  The Court decides the motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b).  For the reasons set forth below, SAR's motion for judgment on the pleadings will be **GRANTED** and the Second Amended Complaint will be **DISMISSED** *with prejudice*.

## I.    BACKGROUND

### A.    Factual Background[3]

#### 1.    *SLT and Krishna's agreement*

Several years ago,[4] Krishna approached SLT's owner and principal, Sandip Patel ("Patel") to seek SLT's assistance in purchasing goods from non-party Bikaji Foods International, Ltd. ("Bikaji") in India to be shipped to Krishna in New Jersey.  SAC ¶¶ 11, 16.  Krishna needed SLT's assistance because Krishna had "creditworthiness issues" and could not purchase the goods from Bikaji without financial assistance.  *Id.* ¶ 16.  SLT helped Krishna by allowing Krishna to draw on SLT's bank credit facility to pay Bikaji for the goods.  *Id.*  ¶¶ 16-17.  Krishna was to then repay SLT by paying down SLT's bank facility with the moneys owed to SLT.  *Id.*  Payment to SLT was to be invoice amount that was paid to Bikaji, plus reimbursement of SLT's bank costs and a four percent commission to SLT.  *Id.* ¶ 17.

---

[2] Although the parties do not dispute this Court's subject matter jurisdiction, the Court has an independent duty to determine its own subject matter jurisdiction.  *See N.J. Carpenters and the Trustees Thereof v. Trishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).  The Court is satisfied that it has admiralty jurisdiction pursuant to 28 U.S.C. § 1333.

[3] The facts in this section are taken from the well-pled factual allegations in the Second Amended Complaint, which the Court presumes to be true for purposes of resolving the motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] Plaintiff does not specify when.

Upon such payment, Krishna could obtain an endorsement on bills of lading provided by the shipping carrier.[5]  *Id.* ¶ 16.  Such endorsement could not be provided without full payment by Krishna.  *See id.*  This arrangement with Krishna further required SLT to be the named consignee on all bills of lading issued by the shipping carrier and the carrier could not release the Cargo to Krishna without an endorsed bill of lading.  *Id.*  The arrangement was memorialized "in or about 2011" with a purchase agreement between SLT and Krishna (the "Purchase Agreement").  *Id.* ¶ 17.

### 2.    *SAR's role as shipping carrier*

SAR was selected as the carrier to ship the Cargo from Bikaji in India to Krishna in New Jersey.[6]  *See id.* ¶ 20.  SAR is a "Federal Maritime Commission licensed Ocean Transport Intermediary" ("OTI") carrier based in Mumbai, India.  *Id.* ¶ 9.  SAR utilizes other companies' vessels to facilitate international shipments.  *Id.*  The bills of lading SAR issued listed Bikaji as the consignor, SLT as the consignee, and Krishna as the "notify address."  *See id.* ¶ 20, Ex. 2.  The bills of lading issued by SAR also specified that the Cargo can be released to Krishna only upon Krishna's presentation and surrender to SAR of an endorsed bill of lading (a/k/a "multi-modal transport document" or "MTD").  *Id.* ¶¶ 20-21.  The relevant language, included in the bills of lading, containing this obligation is:

> Taken in charge in apparently good condition herein at the place of receipt for transport & delivery as mentioned above unless otherwise stated.  The MTD in accordance with the provision contained in the MTD undertakes to perform or to procure the performance of the multimodal transport from the place at which the goods are taken in charge, to the place designated for delivery & assume responsibility of such transport.  *One of the MTD(s) must be surrendered, duly endorsed in exchange of goods.*  In witness where of the original MTD all of this tenor and date have been signed in

---

[5] Plaintiff does not specify who would endorse the bills of lading.
[6] Plaintiff does not specify who selected SAR as the carrier or even whether it had any contact with SAR whatsoever.

the number indicated below one of which being accomplished the other(s) to be void.

*Id.* ¶ 21 (emphasis added), Ex. 2.

> 3.    *SAR delivers the Cargo to Krishna without requiring Krishna to surrender endorsed bills of lading*

However, without SLT's knowledge or consent, SAR systematically caused Cargo to be released to Krishna without requiring that Krishna provide endorsed bills of lading to SAR in exchange for the delivery.  *Id.* ¶ 23.  SAR did so through its delivery agents RTW Logistics Inc. ("RTW") and TTI Worldwide LLC ("TTI") (non-parties).  *Id.* ¶¶ 38-39.  SAR, RTW, and TTI all knew that that Krishna was required to provide endorsed bills of lading before the Cargo could be released to Krishna.  *Id.* ¶ 39.

Moreover, at the time that SAR issued each bill of lading, containing the requirement that the Cargo not be released to Krishna without an endorsed bill of lading, SAR knew that it would not comply with that requirement and would instead release the Cargo to Krishna without the surrender of an endorsed bill of lading.  *Id.* ¶ 26.  Instead, SAR accepted "letters of indemnity" from Krishna whereby Krishna promised to indemnify SAR in connection with the release of the Cargo without surrendering the bills of lading.  *Id.* ¶ 27.

> 4.    *Krishna does not pay SLT for the Cargo*

Around November 2021, SLT had not received interest payments on its bank facility from Krishna for the past six months and conducted an audit of Krishna's interest payments.  *Id.* ¶ 40. Through that audit, SLT discovered that Krishna had been ordering goods from Indian suppliers using SLT's credit facility but without SLT's knowledge or consent and without making the required payments to SLT's bank.  *Id.*[7]

---

[7] SLT does not explain how Krishna was able to obtain money from SLT's credit facility without SLT's approval.

Patel confronted Krishna on or about November 15, 2021. *Id.* ¶ 41. Krishna's owner, Girish Malhotra ("Malhotra") informed Patel that SAR released Cargo to Krishna without endorsed bills of lading. *Id.* Malhotra further informed Patel that, instead of the endorsed bills of lading, Krishna provided SAR with letters of indemnity falsely claiming the Cargo was consigned to Krishna, the bills of lading had not yet arrived, and requested the Cargo be released to Krishna without producing an endorsed bill of lading. *Id.*

SLT claims that Krishna owes over $1,000,000 for the Cargo. *Id.* ¶ 55. Because Krishna is insolvent, SLT was unable to collect damages from Krishna and has now turned to SAR to seek compensation and alleges that SAR's failure to require the surrender of endorsed bills of lading resulted in the alleged damages. *Id.* ¶¶ 55, 75.

**B.     Procedural Background**

This action was first filed on August 31, 2022, in the Central District of California against SAR and RTW alleging only fraud in the execution of a maritime contract. D.E. 1. SLT then dismissed RTW from the action. D.E. 13. After the Central District of California permitted SLT to serve SAR through alternative means pursuant to Fed. R. Civ. P. 4(f)(3), D.E. 22, the court granted SLT an opportunity to amend its complaint, D.E. 40, and SLT filed a first amended complaint on June 15, 2023, D.E. 41. SLT attempted to file a second amended complaint on July 14, 2024, D.E. 44, but the court struck the complaint for failure to comply with Fed. R. Civ. P. 15(a)(2) and Central District of California Local Rule 7-1, D.E. 46. However, on July 19, 2023, the court allowed SLT to file a second amended complaint, D.E. 48, and the Second Amended Complaint was filed on July 20, 2023, D.E. 49.

SAR moved to dismiss the Second Amended Complaint for lack of personal jurisdiction in California pursuant to Fed. R. Civ. P. 12(b)(2). D.E. 52. The court denied SAR's motion and

instead transferred the action to this Court.  D.E. 56.  On January 31, 2024, SAR answered. D.E. 69.

SAR now moves for judgment on the pleadings pursuant to Rule 12(c).  Mot.  SLT opposes. D.E. 84 ("Opp'n").  SAR replies.  D.E. 86 ("Reply").

## II.    LEGAL STANDARD

Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings.  *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).  Therefore, a court applies the same legal standards to a Rule 12(c) motion as it would to a Rule 12(b)(6) motion.  *See id.*  The Court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). The Plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In determining whether a plaintiff states a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  "When an allegation in the complaint is contradicted by a document incorporated in it by reference, the document controls and the allegation is not accepted as true."  *Lungu v. Antares Pharma Inc.*, No. 21-1624, 2022 WL 212309, at *5 n.14 (3d Cir. Jan. 25, 2022).

## III.    ANALYSIS

### A.    Plaintiff's Fraud in the Execution of a Maritime Contract Claim (Count I) is Time-barred

Defendant argues that Plaintiff cannot plead around COGSA's one-year statute of limitation, which was surpassed in 2018 at the latest.  Mot. at 5-11.  Plaintiff argues that the three-year statute of limitations applying to maritime torts under 46 U.S.C. § 30106 applies and began to run when Plaintiff first discovered the alleged fraud: November 1, 2021.  Opp'n at 11.  The Court agrees with Defendant.[8]  This is a breach of contract case covered by COGSA and its one-year time limitation.  Plaintiff's attempt to creatively plead around this fact, invoking fraud in the execution, is unpersuasive.  With respect to its fraud allegation, Plaintiff, at most, pleads that Defendant knew it would breach the terms of the bills of lading when it issued them.  However, it does not allege Defendant misrepresented the very nature of the contract to Plaintiff, thus duping Plaintiff into entering a contract that was significantly different than the ones at issue here.  Because Plaintiff does not allege a fraud claim, COGSA, and its one-year time limitation applies to the entire action.  Therefore, Count I will be **DISMISSED** ***with prejudice***.

#### 1.    COGSA applies to Count I

"COGSA represents the codification of the United States' obligations under the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, August 25, 1924, 51 Stat. 233."  *J.C.B. Sales Ltd. v. Wallenius Lines,* 124 F.3d 132, 134 (2d Cir. 1997).  This convention was the result of a "multinational effort 'to establish uniform ocean bills

---

[8] As Defendant points out, 46 U.S.C. § 30106 is inapplicable under a plain reading of its text. Reply at 11.  46 U.S.C. § 30106 states: "Except as otherwise provide by law a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose."  Plaintiff does not allege claims for personal injury or death. Therefore, 46 U.S.C. § 30106 is inapplicable.  Plaintiff does not identify any other statute of limitations that could apply here.

of lading to govern the rights and liabilities of carriers and shippers inter se in international trade.'" *Id.* (quoting *Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 301 (1959)).  COGSA applies to "every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C. § 30701, note.[9]

COGSA contains a one-year statute of limitations: "In any event the carrier . . . shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. § 1303(6).

It is undisputed that COGSA applies to Count I.  *See* SAC ¶¶ 47, 58; Opp'n at 3-4 (arguing that although COGSA applies, an unreasonable deviation waives a carrier's rights to the defenses provided by COGSA); Mot. at 5.  Defendant argues that since the bills of lading are all from 2015 or 2016, SAC at Exs. 1-2, even if some of the deliveries were scheduled to be in 2017, if the COGSA one-year limitation applies Plaintiff's claim in Count I would be timely only if brought should have been brought by 2018 at the latest.  Mot. at 7.  Plaintiff does not dispute this reasoning, but, despite admitting that COGSA applies, argues that COGSA's one-year statute of limitation does not bar its fraud in the execution claim because (1) Defendant's conduct amounts to an "unreasonable deviation" under COGSA's deviation doctrine resulting in the one-year statute of limitations not applying, Opp'n at 3-6, (2) the statute does not apply to such a claim because the underlying contract applying COGSA is void *ab initio*, *id.* at 5-11, and (3) Defendant should be

---

[9] "In 2006, Congress recodified Title 46 of the U.S. Code, and COGSA was uncodified but reprinted at 46 U.S.C. § 30701, historical and statutory notes." *Caddell Constr. Co. (DE), LLC v. Danmar Lines Ltd.*, No. 18-2900, 2018 WL 6726549, at *2 n.1 (S.D.N.Y. Dec. 20, 2018) (citing Pub. L. No. 109-301; 120 Stat. 1485 (2006)).

estopped from asserting COGSA's one-year limitation period because its conduct was inequitable, *id.* at 4.

The Court finds that (1) Plaintiff does not state a claim for fraud in the execution and, therefore, the bills of lading, to which COGSA applies, are not void *ab initio*; (2) Plaintiff's allegations constitute, at most, a misdelivery to which the COGSA one-year limitation period applies—not an unreasonable deviation or quasi-deviation; and (3) Plaintiff does not allege inequitable conduct that would estop Defendant from relying on COGSA's one-year time limitation. Therefore, Count I, even if it could be re-pled, is time-barred.

### 2. *Plaintiff does not state a claim for fraud in the execution*

Plaintiff argues that the bills of lading are void *ab initio* because Plaintiff pleads a claim for fraud in the execution[10], and because there is no contract, COGSA does not apply to Plaintiff's fraud claim. Opp'n at 7-11. The Court disagrees. Plaintiff's allegations do not convert this case from a contract case into a fraud case.

To state a claim sounding in fraud, the plaintiff must meet Rule 9(b)'s heightened pleading standard. "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Fraud in the execution occurs "when a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'" *Connors*, 30 F.3d at 490 (quoting *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d

---

[10] Plaintiff does not provide any authority for the existence of a cause of action for fraud in the execution as opposed to an affirmative defense for fraud in the execution. It also does not state which law applies to such a cause of action. In any event, Plaintiff's allegations do not rise to the level of fraud in the execution and the Court does not base its decision on the existence, or lack thereof, of a cause of action for fraud in the execution.

769, 774 (9th Cir. 1986) (quoting U.C.C. § 3-305(2)(c)[11])).  A party claiming fraud in the execution must show that it "signed an instrument that is radically different from that which [it] is led to believe that [it] is signing."  *Id.* at 491 (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 9-22 (3d ed. 1987)).  A party claiming fraud in the execution "must show 'excusable ignorance of the contents of the writing signed.'"  *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (quoting *Rozay's Transfer*, 791 F.2d at 774).  Fraud in the execution renders a contract void *ab initio*.  *Connors*, 30 F.3d at 490.

Here, Plaintiff does not allege that Defendant duped it into thinking the bills of lading were any different than what Plaintiff thought they were.[12]  This is not a situation where Defendant told Plaintiff the bills of lading contained a provision mandating the surrender of endorsed bills of lading before the Cargo could be turned over to Krishna where, in fact, the bills of lading contained no such provision.  Rather, Plaintiff alleges both it and Defendant were aware of the exact terms contained in the bills of lading, but that Defendant knew it would breach the terms when it issued the bills of lading.  This is not fraud in the execution.  *See, e.g.*, *Agathos*, 977 F.2d at 1506 ("Starlite does not argue that it thought the collective bargaining agreement it signed was a different document.  Nor does Starlite contend that the Union misrepresented to it the nature of the document it was asked to sign.").  Therefore, Plaintiff fails to plead fraud in the execution in Count I and thus cannot show that the bills of lading, to which COGSA applies, are void *ab initio*.[13]

---

[11] The current U.C.C. provision, as a result of amendment since *Connors* was decided, is U.C.C. § 3-305 (a)(1)).

[12] Plaintiff also does not allege that it executed any of the bills of lading or had any interactions with SAR prior to the bills of lading being issued.

[13] Because the Court finds that Plaintiff does not state a claim for fraud in the execution, it need not determine whether the COGSA one-year time limitation applies if the bills of lading were void *ab initio*.

3.      *Plaintiff's allegations do not constitute unreasonable deviation—they are, at most, misdelivery subject to COGSA's one-year limitation period*

Plaintiff argues that, despite titling Count I as a claim for fraud in the execution, Defendant's conduct amounts to an "unreasonable deviation" or "quasi-deviation," and is therefore not subject to COGSA's time limitation.[14]  The Court disagrees.  Although there is some precedent to suggest that an unreasonable deviation or quasi-deviation *may* bar a defendant from relying on COGSA's one-year limitation period, *see, e.g.*, *Berisford Metals Corp. v. S/S Salvador*, 779 F.2d 841, 848-49 (2d Cir. 1985), *cert. denied*, 476 U.S. 1188 (1986), Plaintiff does not allege such deviation here.[15]

Deviation is a limited doctrine that applies in cases where there is a geographic departure form the contractual voyage and unauthorized on-deck stowage of cargo.  *See B.M.A. Indus., Ltd. v. Nigerian Star Line, Ltd.*, 786 F.2d 90, 91-92 (2d Cir. 1986) (discussing the history and applicability of the deviation doctrine); *see also Vision Air Flight Servs., Inc. v. M/V Nat'l Pride*, 155 F.3d 1165, 1174-75 (9th Cir. 1999) (agreeing that the deviation doctrine "should not be liberally expanded"); *Universal Leaf Tobacco Co. v. Companhia de Navegacao Maritima Netumar*, 993 F.2d 414, 417 (4th Cir. 1993) (refusing to "extend the unreasonable deviation doctrine beyond its current boundaries") (cleaned up).  The Third Circuit has agreed with the limited nature of the deviation doctrine.  *See SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1304

---

[14] Throughout the Second Amended Complaint, Plaintiff characterized SAR's conduct as a "fundamental" or "intentional" breach of the bills of lading and that such breach prevents SAR from relying on the COGSA time limitation.  SAC ¶¶ 28, 24, 58, 64, 72, 73.
[15] Defendant argues that COGSA's one-year limitation period still applies to unreasonable deviation.  Mot. at 13-14 (citing *Bunge Edible Oil Corp. v. M/V's Torm Rask & Ft. Steele*, 949 F.2d 786, 788 (5th Cir. 1992); *Mesocap Indus. v. Torm Lines*, 194 F.3d 1342, 1345 (11th Cir. 1999)).  However, the Court need not decide this issue as it finds that Plaintiff does not allege an unreasonable deviation.

11

(3d Cir. 1992) ("We agree with our sister circuits that the doctrine of quasi-deviation is not to be viewed expansively in the post-COGSA era.").

Importantly, the deviation doctrine does not apply to misdeliveries, even "corrupt or criminal" misdeliveries. *B.M.A. Indus.*, 786 F.2d at 92. Plaintiff's allegations fit more squarely into the misdelivery category than into the deviation category. Like the allegations in this case, in *B.M.A Indus.*, the carrier was only authorized to release the cargo upon "submission of original duly endorsed bills of lading," but instead released the cargo upon presentation of a "warehouse delivery order, rather than the original bills of lading." *Id.* at 91. As is alleged here, this resulted in non-payment. *See id.* Because these allegations did not consist of a geographic departure from the contractual voyage or unauthorized on-deck stowage of cargo, the Second Circuit declined to extend the deviation doctrine to cover these allegations. *See id.* at 92. The Court agrees with the Second Circuit and finds that the deviation doctrine should similarly not be extended here and that Plaintiff's allegations here constitute, at most, a misdelivery.

The case of *Unimac Co., Inc. v. C.F. Ocean Serv., Inc.*, 43 F.3d 1434 (11th Cir. 1995) is also instructive. There, like the case here, the consignee plaintiff alleged that the carrier defendant failed to ensure the plaintiff was paid for the cargo prior to releasing it. *Id.* at 1435-36. The plaintiff argued that the defendant's delivery of goods despite not receiving proof of payment constituted a deviation that prevented the defendant relying on COGSA's protections. *Id.* at 1437. However, the Eleventh Circuit concluded that delivering cargo before the consignee had been paid, contrary to the instructions to the carrier, was misdelivery and not deviation, and that COGSA limitations applied. *Id.* at 1437-38.

Courts hold that claims for misdelivery—even intentional misdelivery—are subject to COGSA's one-year time limitation. For example, in *Int'l Paper Co. v. Malaysia Overseas Lines,*

*Ltd.*, No. 75-297, 1975 WL 6444140, at *1 (S.D.N.Y. Aug. 25, 1975), the plaintiff argued that the defendant carrier misdelivered cargo to "unauthorized persons without the surrender of the appropriate . . . bill of lading . . . ."  The court rejected Plaintiff's argument that the intentional misdelivery was deviation and rejected the claim as time-barred under COGSA's one-year statute of limitation.  *See id.* at 145.  The court reasoned that the intentional release of cargo without surrender of the bill of lading breached the contract of carriage, but it did not "vitiate its terms" and, therefore, such an intentional misdelivery does not deprive a carrier of the protections of COGSA, including the statute of limitations.  *Id.* (citing B*ank of California, N.A. v. Int'l Mercantile Marine Co.*, 64 F.2d 97 (2nd Cir. 1933), *cert. denied*, 290 U.S. 649 (1933)); *see also Unimac*, 43 F.3d at 1437-38.

This court has held the same previously.  In *Hapag-Lloyd Aktiengesellschaft v. Levy*, No. 20-11155, 2021 WL 5630299 (D.N.J. Dec. 1, 2021), the court clearly held that COGSA's one-year limitation period applies to misdeliveries.[16]  *Id.* at *5 (citing *Timco Eng'g, Inc. v. Rex & Co.*, 603 F. Supp. 925, 929 (E.D. Pa. 1985); *Morse Electro Prods. Corp., v. S.S. Great Peace*, 437 F. Supp. 474 (D.N.J. 1977); *Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 660-61 (5th Cir. 1990); *Hellyer v. Nippon Yesen Kaisya*, 130 F. Supp. 209, 211 (S.D.N.Y. 1955); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800 (2d Cir. 1971); *David Crystal, Inc. v. Cunard S.S. Co.*, 339 F.2d 295 (2d Cir. 1964), *cert. denied*, 380 U.S. 976 (1965)).  Therefore, Plaintiff's claims are not for deviation but are, at most, for misdelivery to which the COGSA time limitation applies.

---

[16] Plaintiff attempts to distinguish *Hapag-Lloyd Aktiengesellschaft* because it does not involve claims for fraud.  Opp'n at 6.  However, as the Court will find, *infra*, the inclusion of a fraud allegation does not change this analysis.

4.      *Plaintiff does not allege inequitable conduct that would estop Defendant from relying on COGSA's one-year statute of limitations*

Plaintiff also argues that Defendant should be estopped from asserting COGSA's one-year limitation period because Defendant's conduct was inequitable.  Mot. at 4.  The Court disagrees.

In support of its argument, Plaintiff cites *United Fruit Co. v. J.A. Folger & Co.*, 270 F.2d 666 (5th Cir. 1959) and *Nichols & Co., Inc. v. Cunard S.S. Ltd.*, 367 F. Supp. 947 (S.D.N.Y. 1973). Neither case suggests that Defendant should be estopped from relying on COGSA's one-year limitation period here.

There is a general "principle that, in a proper case, a respondent may, by his representations, promises, or conduct, be estopped to assert the [COGSA statute of limitations]." *United Fruit Co.*, 270 F.2d at 669 (citing *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231 (1959)).  In *Glus*, the petitioner claimed that the respondent was estopped from raising a statute of limitations found in the Federal Employer's Liability Act because it had "induced the delay by representing to petitioner that he had seven years in which to sue." 359 U.S. at 231-32.  The Court found that the doctrine of estoppel applied to that statutory scheme and that petitioner's allegations were sufficient to state a trial question on whether there were grounds to apply the estoppel doctrine.  *Id.* at 235.  In *United Fruit Co.*, the court found that "there is no basis for the shipper to argue estoppel against the carrier" but, rather, it was the shipper who acted unconscionably by "inducing the carrier, just four days before the running of the statute, to grant [an] extension" thus "put[ting] the carrier in the posture of not being able to plead the original statutory period."  270 F.2d at 669.

In *Nichols*, the court found a dispute of fact regarding the question of estoppel in a COGSA claim where the plaintiff alleged that a carrier "lulled plaintiff into a false sense of security" by,

*inter alia*, assuring "defendants' agents that the claims would be paid" even "through and beyond the expiration of the time for bringing suit." 367 F. Supp. at 949.

That conduct is not alleged here. Plaintiff's allegations do not suggest, under any reading, that Defendant misled Plaintiff to induce it not to bring suit earlier. Merely not requiring Krishna to provide endorsed bills of lading before releasing the Cargo to Krishna does not rise to the level of inequitable conduct that would estop Defendant from relying on COGSA's one-year time bar. Perhaps Plaintiff could make such allegations against Krishna, but Plaintiff chose not to bring suit against Krishna—apparently because it does not have sufficient assets to satisfy its debt to Plaintiff. SAC ¶ 55. But Krishna's insolvency does not deprive Defendant of COGSA's protections. Therefore, Count I will be **DISMISSED *with prejudice***. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (holding that a district court need not permit a curative amendment if amendment would be futile).[17]

### B.     Plaintiff's Breach of Maritime Contract Claim (Count II) is Abandoned and Time-barred

Defendant argues that the entire action, including Count II, is barred by COGSA's one-year limitation period. Mot. at 5-7. The Court agrees.

Plaintiff admits in its Second Amended Complaint that COGSA applies to Count II. SAC ¶¶ 64, 72. Plaintiff does not address in its opposition Defendant's argument that COGSA's one-year limitation period applies to Count II. Therefore, Plaintiff waives this count. *See Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").

---

[17] Even were the Court to allow Plaintiff an opportunity to amend its complaint to state a misdelivery claim, that claim would be time-barred by COGSA's one-year limitation period.

Plaintiff appears to argue in the Second Amended Complaint that the breach of contract is a "fundamental" or "intentional" breach and should therefore not be subject to the one-year statute of limitations in COGSA, SAC ¶ 64.  However, this is not persuasive as a "fundamental" or "intentional" breach is no different than an unreasonable deviation,[18] which the Court has already found Plaintiff does not allege, *supra*.  Therefore, Count II will be **DISMISSED** *with prejudice*.

## IV.    CONCLUSION

For the foregoing reasons, SAR's motion will be **GRANTED** and the Second Amended Complaint will be **DISMISSED** *with prejudice*.  An appropriate Order accompanies this Opinion.

Dated: July 2, 2024

Evelyn Padin, U.S.D.J.

---

[18] *See General Electric Co. Int'l Sales Div.*, 706 F.2d 80, 87 (2d Cir. 1983); *Deltak, L.L.C. v. Indus. Mar. Carriers Worldwide*, No. 04-1494, 2004 WL 3007088 at *3 (N.D. Cal. June 21, 2004); *In re M.V. Floreana*, 65 F. Supp. 2d 489, 492 (S.D. Tex. 1999); *Unimac*, 1993 WL 766955, at *7.