<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SLT IMPORTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAR TRANSPORT SYSTEMS PVT LTD, *et al.*, <br><br> Defendants. | No. 23cv18484 (EP) (JBC) <br><br> **MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff SLT Imports, Inc. ("Plaintiff" or "SLT") filed this admiralty action against Defendant SAR Transport Systems Pvt Ltd. ("Defendant" or "SAR"), alleging that SAR intentionally delivered food products (the "Cargo") from an Indian supplier to be shipped to non-party Krishna Food Corp. ("Krishna") in New Jersey without first obtaining the requisite proof of payment by Krishna to SLT, in the form of endorsed bills of lading. D.E. 49 ("Second Amended Complaint" or "SAC"). SLT alleges that these actions constitute fraud in the execution of a maritime contract (Count I) or, alternatively, breach of a maritime contract under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, *et seq.* ("COGSA") and general maritime law (Count II). *Id.*

The Court granted SAR's motion for judgment on the pleadings and dismissed the SAC *with prejudice*, finding that SLT's claims are governed by COGSA and are time-barred by the statue of limitations. D.E. 88 ("Opinion"). SLT now moves for reconsideration of the Court's Opinion. D.E. 90-1 ("Motion" or "Mot.").[1] The Court decides the motion without oral argument.

---

[1] Although the parties do not dispute this Court's subject matter jurisdiction, the Court has an independent duty to determine its own subject matter jurisdiction. *See N.J. Carpenters and the*

*See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, the Court will **DENY** SLT's Motion.

I.      BACKGROUND

   A.      **Factual Background**

The Court assumes familiarity with the factual background of this case which the Court summarized in detail in its previous Opinion.  The Court briefly summarizes the relevant facts here.

   *1.      SLT and Krishna's agreement*

Several years ago,[2] Krishna approached SLT's owner and principal, Sandip Patel ("Patel") to seek SLT's financial assistance in purchasing goods from non-party Bikaji Foods International, Ltd. ("Bikaji") in India to be shipped to Krishna in New Jersey.  SAC ¶¶ 11, 16.  SLT allowed Krishna to draw on SLT's bank credit facility to pay Bikaji for the goods.  *Id.* ¶¶ 16-17.  Krishna was to then repay SLT by paying down SLT's bank facility with the moneys owed to SLT.  *Id.*

Upon such payment, Krishna could obtain an endorsement on bills of lading provided by the shipping carrier.[3]  *Id.* ¶ 16.  Such endorsement could not be provided without full payment by Krishna.  *See id.*  This arrangement with Krishna further required SLT to be the named consignee on all bills of lading issued by the shipping carrier and the carrier could not release the Cargo to Krishna without an endorsed bill of lading.  *Id.*  The arrangement was memorialized "in or about 2011" with a purchase agreement between SLT and Krishna (the "Purchase Agreement").  *Id.* ¶ 17.

---

*Trustees Thereof v. Trishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).  The Court is satisfied that it has admiralty jurisdiction pursuant to 28 U.S.C. § 1333.
[2] Plaintiff does not specify when.
[3] Plaintiff does not specify who would endorse the bills of lading.

2

### 2. *SAR's role as shipping carrier*

SAR was selected as the carrier to ship the Cargo from Bikaji in India to Krishna in New Jersey.[4] *See id.* ¶ 20. SAR is a "Federal Maritime Commission licensed Ocean Transport Intermediary" ("OTI") carrier based in Mumbai, India. *Id.* ¶ 9. The bills of lading SAR issued listed Bikaji as the consignor, SLT as the consignee, and Krishna as the "notify address." *See id.* ¶ 20, Ex. 2. The bills of lading issued by SAR also specified that the Cargo can be released to Krishna only upon Krishna's presentation and surrender to SAR of an endorsed bill of lading (a/k/a "multi-modal transport document" or "MTD"). *Id.* ¶¶ 20-21.

### 3. *SAR delivers the Cargo to Krishna without requiring Krishna to surrender endorsed bills of lading*

However, without SLT's knowledge or consent, SAR released Cargo to Krishna without requiring that Krishna provide endorsed bills of lading to SAR in exchange for the delivery. *Id.* ¶ 23. SAR did so through its delivery agents, non-parties RTW Logistics Inc. ("RTW") and TTI Worldwide LLC ("TTI"). *Id.* ¶¶ 38-39. SAR, RTW, and TTI all knew that that Krishna was required to provide endorsed bills of lading before the Cargo could be released to Krishna. *Id.* ¶ 39.

### 4. *Krishna does not pay SLT for the Cargo*

Around November 2021, SLT had not received interest payments on its bank facility from Krishna for the past six months and conducted an audit of Krishna's interest payments. *Id.* ¶ 40. Through that audit, SLT discovered that Krishna had been ordering goods from Indian suppliers

---

[4] Plaintiff does not specify who selected SAR as the carrier or even whether it had any contact with SAR whatsoever.

using SLT's credit facility but without SLT's knowledge or consent and without making the required payments to SLT's bank. *Id.*[5]

Patel confronted Krishna on or about November 15, 2021. *Id.* ¶ 41. Krishna's owner, Girish Malhotra ("Malhotra"), confirmed that SAR released Cargo to Krishna without endorsed bills of lading. *Id.* Malhotra further informed Patel that, instead of the endorsed bills of lading, Krishna provided SAR with letters of indemnity falsely claiming the Cargo was consigned to Krishna, the bills of lading had not yet arrived, and requested the Cargo be released to Krishna without producing an endorsed bill of lading. *Id.*

SLT claims that Krishna owes over $1,000,000 for the Cargo. *Id.* ¶ 55. Because Krishna is insolvent, SLT was unable to collect damages from Krishna and has now turned to SAR to seek compensation and alleges that SAR's failure to require the surrender of endorsed bills of lading resulted in the alleged damages. *Id.* ¶¶ 55, 75.

B.   **Procedural Background**

This action was first filed on August 31, 2022, in the Central District of California against SAR and RTW alleging only fraud in the execution of a maritime contract. D.E. 1. SLT then dismissed RTW from the action. D.E. 13. After the Central District of California permitted SLT to serve SAR through alternative means pursuant to Fed. R. Civ. P. 4(f)(3), D.E. 22, the court granted SLT an opportunity to amend its complaint, D.E. 40, and SLT filed a first amended complaint on June 15, 2023, D.E. 41. SLT attempted to file a second amended complaint on July 14, 2024, D.E. 44, but the court struck the complaint for failure to comply with Fed. R. Civ. P. 15(a)(2) and Central District of California Local Rule 7-1, D.E. 46. However, on July 19, 2023,

---

[5] SLT does not explain how Krishna was able to obtain money from SLT's credit facility without SLT's approval.

4

the court allowed SLT to file a second amended complaint, D.E. 48, and the Second Amended Complaint was filed on July 20, 2023, D.E. 49.

SAR moved to dismiss the SAC for lack of personal jurisdiction in California pursuant to Fed. R. Civ. P. 12(b)(2). D.E. 52. The court denied SAR's motion and instead transferred the action to this Court. D.E. 56. On January 31, 2024, SAR answered. D.E. 69.

On March 5, 2024, SAR moved for judgment on the pleadings pursuant to Rule 12(c). D.E. 81. The Court granted SAR's motion and dismissed the SAC *with prejudice*. Opinion. SLT now moves for reconsideration pursuant to Local Civil Rule 7.1. Mot. SAR opposes. D.E. 91 (Opp'n).[6]

## II.     LEGAL STANDARD

Motions for reconsideration are not expressly authorized by the Federal Rules of Civil Procedure. However, this District permits such motions under Local Civil Rule 7.1(i) as "an extraordinary remedy that is [to be] granted very sparingly." *Brackett v. Ashcroft*, No. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003) (cleaned up). "Motions for reconsideration exist to 'correct manifest errors of law or fact or to present newly discovered evidence.'" *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 230 (3d Cir. 2020) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

A court may grant a motion for reconsideration if the moving party shows one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law

---

[6] SLT filed an improper reply brief in violation of L. Civ. R. 7.1(d)(3). D.E. 92. SLT then belatedly requested permission to file a reply brief, which the Court denied. D.E. 96. Therefore, the Court does not consider SLT's improper reply brief. Furthermore, even if the Court did consider the reply brief, it would not consider any new affirmative arguments SLT raises that were not raised in its moving brief as those arguments would be waived. *See Marcum v. Columbia Gas Transmission, LLC*, 549 F. Supp. 3d 408, 420 n.4 (E.D. Pa. 2021) ("Courts need not address arguments raised for the first time in a reply brief.").

5

or fact or to prevent manifest injustice. *Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 560 (3d Cir. 2002) (quoting *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

However, reconsideration motions "may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry" of the initial decision. *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). Instead, Local Civil Rule 7.1(i) requires a party to "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *See also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term[.]"); *Kraft v. Wells Fargo & Co.*, No. 16-5729, 2018 WL 1522733, at *2 (D.N.J. Mar. 28, 2018) (citing L. Civ. R. 7.1(i)) (noting that if a party claims something was "overlooked," it must be related to "some dispositive factual or legal matter"). Finally, mere disagreement with the Court's decision is not a basis for reconsideration. *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

## III.   ANALYSIS

### A.   SLT Has Not Set Forth a Valid Basis for Reconsideration

SLT argues that the court clearly erred by (1) not granting leave to amend to adequately allege a fraud in the execution or fraud in the inducement claim, and (2) looking to COGSA for the relevant statute of limitations rather than state law.[7] The Court disagrees. SLT's arguments amount to nothing more than disagreement with the Court's holding and therefore do not provide reason for this Court to reconsider its Opinion.

---

[7] In SLT's summary of its argument, it passingly references that it intends to argue that it should be granted leave to amend to allege facts that would estop SAR from relying on COGSA's one-year statute of limitations. Mot. at 2. However, SLT's argument section does not include any argument on this point and SLT cites no authority in support of this supposed argument. Therefore, any such argument is waived. *See Laborers' Intern. Union of N. Am., AFL–CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

6

       *1.*    *SLT's fraud in the execution and fraud in the inducement claims are futile*

SLT argues that the court erred by not granting it leave to amend to attempt to assert fraud in the execution and fraud in the inducement claims. Mot. at 4-9. However, such claims would be futile.

The Court need not grant leave to amend where amendment is futile. *Mid-Am. Salt*, 964 F.3d at 230. To state a claim sounding in fraud, the plaintiff must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Fraud in the execution occurs "when a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'" *Connors*, 30 F.3d at 490 (quoting *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986) (quoting U.C.C. § 3-305(2)(c)[8])). A party claiming fraud in the execution must show that it "signed an instrument that is radically different from that which [it] is led to believe that [it] is signing." *Id.* at 491 (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 9-22 (3d ed. 1987)). A party claiming fraud in the execution "must show 'excusable ignorance of the contents of the writing signed.'" *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (quoting *Rozay's Transfer*, 791 F.2d at 774)).

As the Court found in its previous Opinion, SLT does not allege that SAR made misrepresentations to it that caused it to think the bills of lading were any different than what SLT thought they were. Opinion at 9-13. Indeed, Plaintiff does not allege that it executed any of the

---

[8] The current U.C.C. provision, as a result of amendment since *Connors* was decided, is U.C.C. § 3-305 (a)(1)).

bills of lading or had any interactions with SAR prior to the bills of lading being issued. To the contrary—SLT alleges both it and SAR were aware of the exact terms contained in the bills of lading, but that SAR knew it would breach the terms when it issued the bills of lading. *See, e.g.*, SAC ¶¶ 6, 7, 20-23, 26. The Court found that this does not constitute fraud in the execution. Opinion at 10. Nevertheless, SLT doubles down that this constitutes fraud in the execution. Mot. at 6 ("SAR's consent to that transaction . . . was knowingly inconsistent with the requirement of the terms on the face of the SAR Bills of Lading that expressly mandated the SLT Cargo would only be released on presentation and surrender of the original and duly endorsed SAR Bills of Lading.") (quoting SAC ¶ 42). Contrary to SLT's position, knowingly breaching a contract without telling the counterparty does not constitute a "modification" of the contract and does not mean that SLT was unaware of a material term of the contract. *Id.* at 8.

SLT also argues that it should be allowed to add additional allegations to state a fraud in the execution claim but does not specify what those allegations would be or how they would turn its breach of contract claim into a fraud in the execution claim. Furthermore, despite already amending its complaint twice, no facts alleged by SLT suggest that it could be able to replead to adequately allege fraud in the execution. Therefore, amendment would be futile. *See Mid-Am. Salt*, 964 F.3d at 230.

SLT also, for the first time in its motion for reconsideration, argues that it should be permitted to amend its complaint to state a claim for fraud in the inducement—a claim SLT previously abandoned in its opposition to SAR's motion for judgment on the pleadings. Mot. at 8-9; *see* D.E. 84, Opp'n to Mot. for Judgment on the Pleadings, at 8 (differentiating fraud in the inducement and fraud in the execution claims and clarifying that SLT is pursing a claim for fraud

8

in the execution). Nevertheless, the Court finds that a claim for fraud in the inducement is similarly futile.

SLT similarly misunderstands the law on fraud in the inducement. To state a fraud in the inducement claim, a plaintiff must establish: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereof; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys. v. Modem Tech. Group, Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (internal citations omitted). The misrepresentation must be "*extraneous* to the parties contract," *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *4 (D.N.J. Aug. 23, 2012) (emphasis in original). "An alleged misrepresentation is extraneous to an agreement when it breaches a duty separate and distinct from the performance of the agreement's terms." *Id.* (cleaned up). Additionally, the plaintiff "must show that the opposing party 'knowingly omitted material facts in the execution of the [relevant contract].'" *GE Capital Corp. v. Oncology Assocs. of Ocean County, LLC*, No. 10-1972, 2014 WL 4793484, at *3 (D.N.J. Sept. 25, 2014) (quoting *The Mall at IV Grp. Props., LLC v. Roberts*, No. 02-4692, 2005 WL 3338369, at *1 (D.N.J. Dec. 8, 2005)) (alteration in original).

SLT claims that SAR's "intentional[] misrepresent[ation] to [SLT] that it would release the subject cargo to Krishna upon a presentation of the original bills of lading, when [SAR] knew that it would in absolute fact actually release the cargo upon Krisha's letters of indemnity and not on presentation of the original bills of lading" constitutes a misrepresentation that could give rise to fraud in the inducement. Mot. at 9. But SLT does not grapple with the fact that the misrepresentation must be *extraneous* to the contract and must omit material facts in the execution of the relevant contract. *See Montclair State Univ.*, 2012 WL 3647427, at *4; *GE Capital Corp.*, 2014 WL 4793484, at *3. The misrepresentations SLT alleges SAR made amount to telling SLT

9

that it would comply with the terms of the contract when it knew that it would not. This is nothing more than an intentional breach. SLT does not specify what allegations it could make that could change the nature of these misrepresentations. Additionally, despite amending its complaint twice already, it has never alleged facts that indicate it might be able to plead a fraud in the inducement claim. Therefore, the Court also finds that leave to amend to allege a fraud in the inducement claim is futile. *See Mid-Am. Salt*, 964 F.3d at 230.

    2.    *The court did not err in applying COGSA's one year statute of limitations*

SLT argues that the Court erred by not applying state law limitation periods for fraud claims. Mot. at 7-8. However, this is merely restating SLT's disagreement with the Court's holding that all of its well-pleaded claims are covered by COGSA and its limitation period. As the Court explained in its Opinion, SLT fails to state claims sounding in fraud and its breach of maritime contract claim is abandoned and is otherwise covered by COGSA's one-year statute of limitation. Therefore, state law statute of limitations are inapplicable and SLT does not raise overlooked authority that holds otherwise.[9]

---

[9] SLT suggests that the Court overlooked its argument regarding the application of state law when it wrote in a footnote that "Plaintiff does not identify any other statute of limitation that could apply here." Mot. at 7 (citing Opinion at 7 n.8). SLT takes the Court's words out of context. In addressing SLT's argument that the three-year statue of limitations applying to maritime torts under 46 U.S.C. § 30106 applies, the Court found this statute inapplicable under a plain reading of its text because SLT does not allege claims for personal injury or death. The Court noted that this was the only other federal maritime statute of limitations that SLT pointed to as potentially applying instead of COGSA's one-year statute of limitations. Opinion at 7 n.8.

10

IV. **CONCLUSION AND ORDER**

For the foregoing reasons, **IT IS**, on this **25th** day of **February** 2025,

**ORDERED** that SLT's Motion for Reconsideration, D.E. 90, is **DENIED**.

Dated: February 25, 2025

Evelyn Padin, U.S.D.J.